IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Melissa B. Baldwin, | C/A No. 0:16-363-PJG |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

    This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Melissa B. Baldwin, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

    Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the named defendant because she became the Acting Commissioner of Social Security on January 23, 2017.

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



# ADMINISTRATIVE PROCEEDINGS

In October 2012, Baldwin applied for DIB, alleging disability beginning December 15, 2006. Baldwin's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on August 7, 2014, at which Baldwin appeared and testified, and was represented by Leeds Barroll, IV, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on November 4, 2014 finding that Baldwin was not disabled. (Tr. 12-20.)

Baldwin was born in 1958 and was forty-seven years old on her disability onset date. (Tr. 20.) She has a high school education and past relevant work experience as an administrative assistant supervisor. (Tr. 155.) Baldwin alleged disability due to spinal, lower back, and neck injuries; scoliosis; fibromyalgia; a herniated disc; and teeth chattering. (Tr. 154.)

In applying the five-step sequential process, the ALJ found that Baldwin had not engaged in substantial gainful activity from her alleged onset date of December 15, 2006 through her date last insured of December 31, 2011. The ALJ also determined that, through the date last insured, Baldwin's degenerative disc disease was a severe impairment. However, the ALJ found that, through the date last insured, Baldwin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through the date last insured, Baldwin retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b). However, claimant could never climb ladders, ropes, and scaffolds, only occasionally climb ramps, climb stairs, stoop, kneel, crouch, perform overhead reaching, crawl, and balance, and only frequently reach, handle, and finger. Claimant needed to avoid concentrated exposure [to] vibration and avoid all exposure to hazards and unprotected heights.

(Tr. 15.) The ALJ found that, through the date last insured, Baldwin was capable of performing past relevant work as an administrative assistant supervisor, and that this work did not require the

performance of work-related activities precluded by Baldwin's residual functional capacity. Therefore, the ALJ found that Baldwin was not disabled from the alleged onset date of December 15, 2006 through the date last insured of December 31, 2011.

The Appeals Council denied Baldwin's request for review on January 20, 2016, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Baldwin raises the following issues for this judicial review:

I. The ALJ erred in failing to honor the Treating Physician Rule[;]

II. The ALJ erred in finding that myofascial pain is a non-severe impairment[;]



III.   The ALJ erred in failing to evaluate symptoms properly pursuant to the two-part test of Craig v. Chater and SSR 96-7p[;]

IV.   The ALJ violated the legal standard for evaluating RFC[.]

(Pl.'s Br., ECF No. 9.)

**DISCUSSION**

Although Baldwin raises several issues for this judicial review, the court, like the Commissioner, addresses these issues in order of the sequential process. Further, for the reasons that follow, the court finds that Baldwin has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law.

**A.   Severity of Impairments**

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii).[3] The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)   Capacities for seeing, hearing, and speaking;
(3)   Understanding, carrying out, and remembering simple instructions;
(4)   Use of judgment;

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claim was filed in 2012, all references in the instant Report and Recommendation are to the prior versions of the regulations which were in effect at the time Baldwin's application for benefits was filed unless otherwise specified.

> (5)  Responding appropriately to supervision, co-workers and usual work situations; and
> (6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Baldwin's degenerative disc disease was a severe impairment, but that Baldwin's other impairments, including her allegations of myofascial pain syndrome, were nonsevere. (Tr. 14-15.) With regard to Baldwin's alleged myofascial pain, the ALJ specifically stated as follows:

> Claimant also testified she has been diagnosed with fibromyalgia and myofascial pain syndrome. However, the record reveals no objective medical evidence from an "acceptable medical source" prior to the date last insured demonstrating the presence of these conditions. Medical evidence prior to the date last insured does reveal any definitive diagnosis of fibromyalgia or myofascial pain syndrome. Thus, I conclude that fibromyalgia and myofascial pain syndrome were not medically determinable impairments (SSRs 96-4p and 06-03p).

(Tr. 15.) Baldwin challenges this finding, pointing to evidence demonstrating that Baldwin "has had chronic, continuous cervical, thoracic, and even lumbar pain radiating to all extremities since 2005: this would appear to embrace myofascial pain." (Pl.'s Br. at 11, ECF No. 9 at 11.) Baldwin argues that the ALJ erred in failing to explain the difference between the pain documented, further arguing that she "suffers myofascial pain because of her degenerative disc disease." (Id. at 12.)

However, as argued by the Commissioner, Baldwin's general arguments do not reveal any errors in the ALJ's finding. In fact, Baldwin has not directed the court to any evidence

PJG

demonstrating that Baldwin was diagnosed with myofascial pain syndrome or to findings of the requisite trigger points associated with this impairment. Thus, remand is not warranted on this basis.

**B.      Treating Sources**

Baldwin also argues that the ALJ erred in evaluating the opinion evidence from Dr. Frank Martin, her treating physician, and Keith Didyoung, Dr. Martin's physician's assistant. The law applicable to Baldwin's application provides that regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that a finding that

> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

Moreover, ALJs are instructed to apply the above factors—including the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion—to all medical opinions, including those from consultative examiners and medical sources who are not acceptable medical sources, such as physician's assistants.[4] 20 C.F.R. § 404.1527(c), (f); cf. 20 C.F.R. § 404.1502 (a)(8) (including licensed physician's assistants as acceptable medical sources for impairments within their licensed scope of practice "only with respect to claims filed . . . on or after March 27, 2017"). Importantly, more weight is generally given to the opinions of an examining source than a non-examining one.

---

[4] In evaluating opinions from other sources, not every factor may apply. See 20 C.F.R. § 404.1527(f).



Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id.

In this case, the ALJ evaluated the opinions from both of these sources, finding as follows:

In March 2006, Keith Didyoung, PA-C, reported claimant was "permanently disabled" due to injuries suffered in a 2005 car accident, and "need[ed] to be out of work until further reduction of pain is attained" (Exhibit 12F).

I give Mr. Didyoung's opinions light weight. Whether or not an individual is "disabled" within the meaning of the Social Security Act is an issue reserved to the Commissioner (SSR 96-5p), and Mr. Didyoung did not describe any specific work-related limitations. Also, Mr. Didyoung's opinions are inconsistent with one another because, though Mr. Didyoung stated claimant was "permanently disabled," he also said claimant only needed to "be out of work until further reduction of pain [was] attained." Moreover, Mr. Didyoung's opinions are inconsistent with Dr. Rambo's opinions, as well as evidence described above showing that diagnostic testing revealed only mild abnormalities at worst, physical exams were mostly unremarkable, and claimant sought almost no treatment in 2008. Further, though Mr. Didyoung apparently based his opinions to a substantial degree on claimant's reported radiculopathy, nerve conduction studies in 2006 actually showed no radiculopathy (Exhibit 3F/9).

J. Frank Martin, MD, completed a statement concerning claimant in March 2013. Therein, Dr. Martin reported claimant had lost strength and sensation in her extremities. Dr. Martin also reported claimant "ha[d] been unable to maintain any substantial gainful activity on a reliable, consistent basis" since 2005. Dr. Martin also stated claimant was "unable to sit or stay in one position for any length of time," Exhibit 28F.

The record also contains a second statement from Dr. Martin, where Dr. Martin reported [claimant] "ha[d] lost strength and sensation in [her] upper and lower extremities and [was] unable to hold any gainful employment" (Exhibit 35F).

I give Dr. Martin's opinions light weight. Whether or not an individual is "disabled" within the meaning of the Social Security Act is an issue reserved to the Commissioner, and treating source opinions thereon are not entitled to special significance (SSR 96-5p). Also, contrary to Dr. Martin's report that claimant had lost strength and sensation in her extremities, exams cited above generally showed normal strength and sensation, and nerve conduction studies in 2006 revealed no radiculopathy or neuropathy. In addition, Dr. Martin's opinions are inconsistent with evidence described above showing diagnostic testing revealed only mild

PJG

abnormalities at worst, physical exams were mostly unremarkable, and claimant sought almost no treatment in 2008.

(Tr. 18-19) (fourth alteration added).

In challenging the ALJ's evaluation of the opinion evidence, Baldwin argues that the ALJ failed to note that Dr. Martin's opinion contained a "detailed discussion of pain." (Pl.'s Br. at 5, ECF No. 9 at 5.) Baldwin also argues that the opinions are supported by objective findings. For example, Baldwin argues treatment notes document muscle spasms, and points to treatment notes from an orthopedist in 2006 indicating that a shot administered to Baldwin's shoulder did not help; that the cervical MRI showing "persistent foraminal stenosis in C3-4 and C6-7 areas on the left" could account for Baldwin's left arm symptoms; that Baldwin was still experiencing pain and could not do her work because prolonged sitting caused pain; and that Baldwin was prescribed Neurontin. (Id. at 5-6.) Baldwin challenges the ALJ's reliance on Dr. Rambo's 2006 opinion, arguing that this opinion "would not refute disability in 2011." (Id. at 6.) Finally, Baldwin points to treatment notes in 2011 documenting muscle spasms, diagnosing back and neck pain, and indicating that Baldwin was taking medications such as Prednisone, Xanax, Demerol, Lyrica, Lexapro, and Prozac. Baldwin also argues that the opinions are well-supported by medically acceptable techniques, and appears to argue that the Commissioner cannot point to persuasive contrary evidence to refute these opinions.

Upon thorough review of the ALJ's decision and the record, the court concludes that the ALJ applied the relevant factors in evaluating the opinion evidence, and finds that Baldwin has failed to demonstrate that the ALJ's evaluation of these opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks

and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). The decision reflects that the ALJ weighed these opinions and reasonably found that the medical findings and observations in the record did not support all of them.[5] Although Baldwin may be able to point to select medical records that arguably support the opinions, she has failed to demonstrate that the ALJ's conclusions regarding them are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly relied on medical records, treatment notes, examination findings, and evidence in evaluating the opinions. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

Thus, the court finds that Baldwin has not shown that the ALJ's decision with regard to the opinion evidence, was unsupported by substantial evidence or reached through application of an incorrect legal standard.

---

[5] Moreover, the court notes that to the extent any source opined that Baldwin is disabled or unable to work, such an opinion is reserved to the Commissioner and not entitled to special significance. See 20 C.F.R. § 404.1527(d) (explaining that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance).

PJG

## C. Subjective Complaints

Baldwin also challenges the ALJ's evaluation of her subjective complaints of pain. With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.[6] "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective

---

[6] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. See 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). Because this application was adjudicated prior to the effective date of SSR 16-3p, the court analyzes Baldwin's allegations under SSR 96-7p. See Best v. Berryhill, No. 0:15-cv-02990-DCN, 2017 WL 835350, at *4 n.3 (Mar. 3, 2017) (applying SSR 96-7p under the same circumstances). Regardless, the court observes that SSR 16-3p discontinues use of the term "credibility," but "the methodology required by both SSR 16-3p and SSR 96-7, are quite similar. Under either, the ALJ is required to consider [the claimant's] report of his own symptoms against the backdrop of the entire case record." Id. (alteration in original) (quoting Sullivan v. Colvin, Civil Action No. 7:15-cv-504, 2017 WL 473925, at *3 (W.D. Va. Feb. 3, 2017)); see also Keaton v. Colvin, No. 3:15CV588, 2017 WL 875477, at *6 (E.D. Va. Mar. 3, 2017) ("Effective as of March 28, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p effectively removes the use of the term "credibility" but does not alter the substantive analysis.").

medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized Baldwin's allegations as follows:

Claimant appeared before me on August 7, 2014 and gave testimony. Therein, claimant stated she experiences back pain, chatters or grinds her teeth due to pain, experiences "a lot of nerve pain," experiences neck and arm pain, and has been diagnosed with fibromyalgia or myofascial pain syndrome. Claimant also stated that, in 2010 and 2011, she laid down most of the day, experienced extremity numbness and weakness, experienced some grogginess due to medication, could not [lift] over 10 pounds, could only stand 5-10 minutes at a time, could only sit about 20 minutes at a time, had difficulty raising the arms, and had a hard time writing or opening jars. Claimant additionally stated she has a history of headaches or migraines lasting for

several hours to several days, has received physical therapy, and has problems bending over.

(Tr. 16.)

The ALJ found that "other than [Baldwin's] alleged demyelinating disease, fibromyalgia, teeth problems, and myofascial pain syndrome, [her] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible based on the record in this case. (Tr. 16.) In support of this finding, the ALJ found that the medical evidence partially supported Baldwin's allegations. Specifically, the ALJ observed as follows:

> MRI of claimant's cervical spine in 2005 showed degenerative disc disease with some foraminal protrusion (Exhibit 1F), and claimant underwent disc decompression at C6-7 in October 2005 (Exhibit 11F/1). In addition, MRIs of claimant's lumbar spine in 2005 and 2009 revealed degenerative changes (Exhibits 2F and 27F). Moreover, exam in January 2006 showed some pain with hip, neck, shoulder, and hip motion (Exhibit 4F/10), records from 2006 report a history of epidural steroid injections and complaints of extremity numbness or pain (See, for example, Exhibit 4F/10), and records show claimant was prescribed a number of pain medications such as Lortab (Exhibit 17F). Moreover, claimant received physical therapy for neck and back pain in 2009 and 2011 (Exhibits 5F, 20F, 22F, and 26F), and exam in April 2010 showed some low back tenderness (Exhibit 24F/2).

(Id.) The ALJ found that this evidence partially supported Baldwin's allegations that "she experienced neck, back, and extremity symptoms with problems lifting, using her hands, and bending," and, therefore, the ALJ limited Baldwin to "light work exertionally with substantial postural and manipulative limitations." (Id.) The ALJ continued, restricting Baldwin's exposure to vibrations based on her documented pain and to hazards and unprotected heights based on her pain and medication usage.

However, the ALJ found that other evidence indicated that Baldwin's "impairments were not highly limiting and would not preclude the performance of activities within the restrictions set forth

*PJG*

in my residual functional capacity finding." (Tr. 17.) Specifically, the ALJ first found that "diagnostic testing did not show a great deal of abnormalities, suggesting claimant's spinal impairments were not highly limiting." (Id.) The ALJ summarized medical reports indicating MRIs in 2005 and 2009 showed mild abnormalities with one doctor reporting the 2009 lumbar spine MRI "showed only mild abnormalities with possible 'minimal contact with the right L4 nerve root.' (Exhibit 27F/3-4)." The ALJ observed that one doctor reported a 2005 lumbar spine MRI " 'did not show anything to explain the numbness in [claimant's] legs' (Exhibit 27F/3-4)" and another doctor reported that a 2006 nerve conduction study was " 'normal' with no evidence of radiculopathy or neuropathy (Exhibit 3F/9)." (Id.) The ALJ also noted that spinal MRIs from early 2014, "well after the date last insured," "were also largely unremarkable with only mild to moderate abnormalities (Exhibit 33F/13 and 21)." (Id.) Second, the ALJ found that "physical exams of record were mostly unremarkable, showing that claimant had a great deal of functional ability." (Id.) The ALJ summarized medical records from January 2006 through 2012, indicating findings such as mild pain, normal reflexes, normal range of motion and no tenderness in the neck, normal gait, and normal extremity strength. The ALJ also acknowledged and summarized records after Baldwin's date last insured, finding that "recent unremarkable exams also contradict claimant's allegations of ongoing, debilitating pain that causes her to he mostly bed ridden." (Id.) Third, the ALJ found that "though claimant alleges disabling symptoms since December 2006, the record reveals almost no medical treatment in 2008," finding "[s]uch a large treatment gap would not be expected of someone experiencing highly limiting symptoms," and that "[s]imilarly, the record reveals no emergent treatment as might be expected of someone with persistent, highly limiting pain." (Tr. 18.) Thus, the ALJ found

PJG

though claimant testified she could only sit, stand, and walk for short periods, could only lift 10 pounds, and could not raise her arms, such limitations are not supported by the objective medical evidence described above. In particular, exams generally showed normal strength, no exam revealed any muscle atrophy, cervical spine MRIs did not show substantial abnormalities, exams largely showed normal gait, claimant sought almost no medical treatment in 2008, and nerve conduction studies revealed no radiculopathy (Exhibit 3F/9).

(Id.)

The ALJ also considered the opinion evidence. This evidence included the opinions of Dr. Martin and Mr. Didyoung, which are discussed in detail above, as well as (1) a February 2006 opinion from Dr. Rambo that he " 'really c[ould not] keep [claimant] out of work' given the mild abnormalities shown on MRIs and unremarkable exams (Exhibit 3F/6)"; (2) a January 2006 temporary restriction from a source at The Moore Orthopedic Clinic reporting "claimant was 'to remain out of work' until her next appointment in February 2006 (Exhibit 4F/14)"; and (3) the state agency consultants' conclusions that "there was insufficient evidence by which to evaluate the severity of claimant's impairments as of the date last insured (Exhibits 1A and 3A)." (Tr. 18-19) (alterations in original). In sum, the ALJ found Baldwin "has a history of lumbar and cervical spine abnormalities with some reported back, neck, and extremity pain. However, MRIs of the lumbar and cervical spine prior to the date last insured showed largely mild abnormalities, nerve conduction studies in 2006 were normal, physical exams were largely unremarkable, and the record reveals almost no medical treatment in 2008." (Tr. 19-20.)

*PJG*

Baldwin attempts to challenge some of the reasons offered by the ALJ, arguing the record and the opinion evidence support Baldwin's subjective complaints.[7] Further, Baldwin appears to argue that she may rely solely on her subjective reports to support Step Two of the process and that the ALJ erred by only considering medical evidence in the second step. Baldwin also challenges the ALJ's reliance on her failure to seek treatment in 2008, arguing that she sought treatment both before and after 2008, which is all prior to her date last insured. Finally, Baldwin argues that the ALJ failed to sufficiently explain his evaluation of Baldwin's subjective complaints and appears to challenge the ALJ's consideration of the side effects from her medications.

As an initial matter, with regard to Baldwin's argument that once she satisfied the first step of the two-step process in evaluating allegations of disabling pain or other symptoms, she was entitled to rely exclusively on subjective evidence to prove the intensity, persistence, and severity of the symptoms and that the ALJ erred by considering only the medical evidence, the court disagrees. In Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), the Fourth Circuit stated: "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day," 453 F.3d at 565; however, the Hines Court acknowledged that "[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or

---

[7] To the extent that Baldwin's allegation of error hinges on her allegation that the ALJ erred in failing to properly consider her myofascial pain syndrome and erred in evaluating the opinion evidence, for the reasons discussed above, Baldwin has failed to demonstrate any error by the ALJ. Similarly, to the extent that Baldwin is challenging the ALJ's analysis at Step One of the process, the court finds that Baldwin has failed to demonstrate that it was insufficient.

*PJG*

sensory or motor disruption), if available, should be obtained and considered." Id. at 564 (quoting SSR 90-1p). Moreover, the Hines Court noted that

> [w]hile objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

Id. at 565 n.3 (quoting Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)). Baldwin has failed to demonstrate that the ALJ erred in applying this law.[8]

Moreover, upon careful consideration of Baldwin's remaining arguments and the record in this matter, the court finds that Baldwin has failed to demonstrate that the ALJ's evaluation of Baldwin's subjective complaints is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Baldwin has failed to demonstrate that the ALJ failed to properly apply the relevant factors in evaluating her subjective complaints. See 20 C.F.R.

---

[8] Moreover, the court observes that the ALJ found there was objective evidence only as to *some* of the alleged symptoms.



§ 404.1529(c)(3). Further, while Baldwin may point to selective medical evidence in the record in support of her argument, such evidence does not render the ALJ's decision unsupported. Even accepting Baldwin's arguments as true, the court finds that her arguments do not render the ALJ's decision unsupported in light of all the reasons offered by the ALJ. Thus, as stated above, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

**D.     Residual Functional Capacity**

Finally, Baldwin argues that the ALJ failed to sufficiently explain the residual functional capacity as required by SSR 96-8p and failed to engage in a function-by-function assessment of Baldwin's capacities as required by SSR 96-9p. A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.

Much of Baldwin's argument hinges on her subjective complaints which were discounted by the ALJ, and for the reasons discussed above, Baldwin has failed to demonstrate any reversible error by the ALJ in evaluating her subjective complaints. Moreover, review of the ALJ's opinion as a whole reflects that he sufficiently explained Baldwin's residual functional capacity assessment and the basis for the limitations and restrictions included. Similarly, the court finds unavailing Baldwin's argument that the ALJ erred in failing to perform a function-by-function analysis in determining Baldwin's RFC. Cf. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original). Baldwin has failed to point to contradictory evidence in the record or other inadequacies in the ALJ's analysis that frustrate meaningful review such that remand would be appropriate.

## ORDER

For the foregoing reasons, the court finds that Baldwin has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

April 24, 2017
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE